UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOSEPH GROSSMAN,<br>　　　Plaintiff,<br><br>　　　v.<br><br>WARDEN DANIEL MARTIN;<br>CORRECTIONAL OFFICER CARTER;<br>CRYSTAL CANIGLIA; and CENTRAL<br>FALLS DETENTION FACILITY<br>CORP.,<br>　　　Defendants. | C.A. No. 1:20-CV-00048-JJM-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Before the Court is Plaintiff Joseph Grossman's Motion for Summary Judgment and Defendants Warden Daniel Martin, Correctional Officer Erika Carter, Unit Manager Crystal Caniglia, and Central Falls Detention Facility Corp.'s Cross-Motion for Summary Judgment.[1] ECF Nos. 163, 172. Mr. Grossman alleges that he was retaliated against because he filed a grievance against Officer Carter and Unit Manager Caniglia. Defendants respond that they did not retaliate against Mr.

---

[1] Defendants oppose Plaintiff's Motion for Summary Judgment. ECF No. 171. Mr. Grossman did not oppose Defendants' Cross Motion for Summary Judgment. However, because an overwhelming majority of the issues discussed in Defendants' Cross Motion were already addressed and effectively responded to in Mr. Grossman's Motion for Summary Judgment, the Court will presume that Mr. Grossman, in lieu of filing an opposition, intended his original Motion for Summary Judgment to simultaneously constitute his opposition to Defendants' Motion.

Grossman, and cross-move on the grounds that Mr. Grossman failed to exhaust his administrative remedies.

## I.   BACKGROUND[2]

Joseph Grossman has been a detainee at the Donald W. Wyatt Detention Facility ("Wyatt") since April 2019. ECF No. 164 at ¶ 1. The A-dorm, where Mr. Grossman was housed, has had daily lockdown periods from: 10:50 a.m. until 12:00 p.m.; 2:50 p.m. until 4:00 p.m.; 6:20 p.m. until 8:00 p.m.; and 9:50 p.m. until 7:30 a.m. the following morning. *Id.* at ¶ 7. The dormitory areas where detainees are kept have no bathroom or water facilities. ECF No. 163-11 at 20:21–24. A-dorm detainees were allowed to leave two at a time to obtain water or use the bathroom during lockdown periods. ECF No. 174 at ¶ 9.

On November 20, 2019, during the 10:50 a.m. lock down period, Officer Erika Carter refused to let Mr. Grossman or any other A-dorm detainee get water or use the restroom. ECF No. 163-10 at ¶¶ 17–18. Upon denial, Mr. Grossman informed Officer Carter of Wyatt's policy that detainees may use the restrooms and obtain drinking water during lockdown hours so long as they leave two at time.[3] ECF No.

---

[2] Mr. Grossman did not oppose Defendants' Statement of Undisputed Facts, ECF No. 173. However, the Court will not treat them as entirely undisputed since Mr. Grossman disputes some of Defendants' contentions in the record he provided. For these reasons, the Court will treat Paragraphs 305–47 of Defendants' Statement of Undisputed Facts as undisputed only if there is no dispute in the record as to the nature of the underlying facts.

[3] This policy comports with the testimony of Defendant Warden Daniel Martin. *See* ECF No. 163-46 at 2 (explaining that "detainees can use the restrooms – two at a time – during lockdown." Warden Martin also said "detainees may obtain water during lockdowns"). At no other point before November 20, 2019 was it reported that

164 at ¶ 10. Despite Mr. Grossman's pleas, Officer Carter still refused to let any detainee leave their cell during the 10:50 a.m. lockdown. After continued pleas to get water, Officer Carter called her supervisor, Sergeant Cote to confirm that the denial of water was a permissible action. ECF No. 163-11 at 22:5–23:6; ECF No. 163-11 at 29:14. Sgt. Cote confirmed that detainees do not need to be allowed to leave their cells during lockdown periods. ECF No. 163-11 at 23:4–6.

While this event was unfolding, Mr. Grossman informed Officer Carter of his intention to file a grievance. ECF No. 163-10 at ¶ 22. Later that day, Mr. Grossman filed the grievance. ECF No. 164 at ¶ 48.

Because Mr. Grossman was not the only detainee to file a grievance based on this situation,[4] Warden Daniel Martin held a town hall meeting.[5] ECF No. 164 at ¶ 88; ECF No. 173 at ¶ 316. At this meeting, Warden Martin addressed, among other things,[6] access to water and the restrooms during lockdowns. ECF No. 163-11 at 98:8–13. Warden Martin confirmed that detainees can use the restroom and obtain water during lockdown periods. *Id.* at ¶¶ 94–95. Warden Martin also arranged to have a water station provided in the A-dorm dormitory to ensure that detainees

---

detainees were unable to obtain water or use the restroom. ECF No. 163-11 at 17:17–22.

[4] Detainees Jason Boudreau and Brien Pennell, both of whom were also housed in the A-dorm, filed similar grievances. ECF No. 163-11 at 38:17–40:3.

[5] Immediately following the lockdown, but before the town hall meeting with Warden Martin, Mr. Grossman alleges that he contacted the Office of the Inspector General in Washington, DC. ECF No. 163-11 at 32:10–33:2. However, there is no independent evidence to support this factual allegation. ECF No. 174 at ¶ 58.

[6] For example, Sgt. Cote yelling at detainees, ECF No. 163-10 at ¶ 31, to which Warden Martin instructed Sgt. Cote to apologize. ECF No. 173 at ¶ 316.

always had access to water. ECF No. 164 at ¶ 96. Finally, Warden Martin approved Mr. Grossman's grievance against Officer Carter and reminded her of A-dorm's restroom policy. ECF No. 172 at 3.

The next day, Unit Manager Crystal Caniglia received confidential reports that Mr. Grossman had acted disrespectfully toward Officer Carter during the incident. ECF No. 173 at ¶ 346. In response, Unit Manager Caniglia informed Mr. Grossman that although there were roughly one dozen detainees ahead of him for a pod worker position, additional instances of disrespect could adversely affect his likelihood of obtaining employment. ECF No. 163-11 at 38:4–40:2. Indeed, "it is well known that a detainee must be respectful in order to maintain their job." ECF No. 174 at ¶ 138. As a response to her actions, Mr. Grossman filed another grievance, this time against Unit Manager Caniglia. ECF No. 163 at 38.

Warden Martin spoke with Mr. Grossman and two other detainees in the Shift Command Office at Wyatt. ECF No. 163-11 at 51:12–19. Warden Martin informed Mr. Grossman and the other two detainees that he had hoped they would follow the chain of command, coming to him with any problems before contacting authorities outside of Wyatt.[7] *Id.* at 52:2–10. Additionally, Warden Martin informed the detainees that he would speak with Officer Carter and Unit Manager Caniglia about any potential forthcoming retaliation actions in response to filing a grievance. *Id.* at 54:7–12. Soon after, Warden Martin denied Mr. Grossman's grievance filed against

---

[7] This is regarding detainees allegedly contacting the Office of the Inspector General and their personal attorneys. *See* ECF No. 164 at ¶¶ 89–90, 292; *see also supra* note 4.

Unit Manager Caniglia.[8]   ECF No. 163-5.   Mr. Grossman appealed the Warden's denial of his grievance three days later.[9]   ECF No. 173 at ¶ 347.

## II.   STANDARD OF REVIEW

Summary judgment is proper when the pleadings, discovery, and affidavits, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. To determine whether summary judgment is suitable, the court analyzes the record in the light most favorable to the nonmovant and draws all reasonable inferences in that party's favor. *See Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997). "When reviewing cross-motions for summary judgment, [courts] must decide whether either of the parties deserves judgment as a matter of law on facts that are not disputed. [Courts] review each motion independently, and view the record in the light most favorable to the nonmoving party when doing so." *Dahua Tech. USA Inc. v. Feng Zhang*, 988 F.3d 531, 539 (1st Cir. 2021) (citation omitted) (internal quotation omitted); *see also Wightman v. Springfield Terminal Ry.*, 100 F.3d 228, 230 (1st Cir. 1996) ("Cross motions simply require [courts] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.").

---

[8] Mr. Grossman did not file a grievance against Warden Martin. ECF No. 163-1 at 4.

[9] There are allegations that Unit Manager Caniglia impermissibly failed other A-dorm detainees' "cell compliance" when they had only one discrepancy instead of the two required by the Wyatt Detainee Handbook. *See, e.g.*, ECF No. 163 at 15. However, Mr. Grossman does not allege that the incident constituted retaliation. *See* ECF No. 163-11 at 58:18–21 (stating that "retaliation is what Caniglia said to [Mr. Grossman] on the 21st and [Warden] Martin said on the 22nd"). Therefore, it is not relevant background information given its inapplicability to this action.

"Where . . . a district court rules simultaneously on cross-motions for summary judgment, it must view each motion, separately, through this prism." *Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010). That is, each motion and the record it provides will be viewed in the light most favorable to the nonmovant. *See ibid.* "It is settled law that each cross-motion for summary judgment must be decided on its own merits." *Puerto Rico Am. Ins. Co. v. Rivera-Vazquez*, 603 F.3d 125, 133 (1st Cir. 2010). Thus, the summary judgment "standard does not change when the parties cross-move for summary judgment." *Krist v. Pearson Educ., Inc.*, 419 F. Supp. 3d 904, 907 (E.D. Pa. 2019) (citing *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016)).

For those issues on which the parties did not cross-move, the burden falls first on the movant to demonstrate that there is no genuine issue of material fact that needs resolution at trial. *See Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995). The burden then shifts to the nonmovant who must oppose the motion by presenting facts to show a genuine issue of material fact remains. *See id.* A factual issue is genuine if it "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material if it holds the power to "sway the outcome of the litigation under applicable law." *Nat'l Amusements*, 43 F.3d at 735. The nonmovant must rely on more than "effusive rhetoric and optimistic surmise" to prove a genuine issue of material fact. *Cadle*, 116 F.3d at 960. Instead, the evidence relied on by the nonmovant "must have substance in the sense that it limns differing versions of the truth which a factfinder must

resolve . . . ." *Nat'l Amusements*, 43 F.3d at 735 (quoting *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989)).

Finally, the Court will hold pro se litigants to a more accessible standard when filing pleadings. *See Ericson v. Magnusson*, No. 2:12-CV-00178-JAW, 2013 WL 2634761, at *2 (D. Me. June 12, 2013) ("Pro se litigants are not held to the same strict standards as attorneys when it comes to technical rules of procedure."); *cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding that "[a] document filed pro se is to be liberally construed") (citation omitted) (internal quotations omitted).   More particularly:

> [A]s a general rule, [courts] are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects.

*Dutil v. Murphy*, 550 F.3d 154, 158 (1st Cir. 2008).   However, "[t]he right of self-representation is not 'a license not to comply with relevant rules of procedural and substantive law.'" *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 140 (1st Cir. 1985) (quoting *Faretta v. California*, 422 U.S. 806, 835 n.46 (1975)).   Thus, the Court will consider a pro se movant's circumstances when reviewing his motion for summary judgment but will not provide "extra procedural swaddling." *See Eagle Eye Fishing Corp. v. U.S. Dep't of Com.*, 20 F.3d 503, 506 (1st Cir. 1994).

## III.   DISCUSSION

There are two legal bases proffered that may provide an independent justification for granting summary judgment.   The Court starts by addressing the

parties' predominant contention: that Wyatt employees retaliated against Mr. Grossman for filing a grievance against Officer Carter. Then, the Court will address Defendants' contention that Mr. Grossman did not exhaust his administrative remedies.

A.    Retaliation

"Retaliation for the exercise of [one's] rights, or any constitutionally protected right, is itself a violation of the constitution actionable under 42 U.S.C. § 1983." *Price v. Wall*, 464 F. Supp. 2d 90, 96 (D.R.I. 2006). "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right . . . ." *Id.* "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (internal quotations omitted). This means that a plaintiff "must prove that her conduct was constitutionally protected and was a 'substantial' or 'motivating' factor for the retaliatory decision . . . ." *Gericke v. Begin*, 753 F.3d 1, 6 (1st Cir. 2014). Additionally, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves*, 139 S. Ct. at 1722 (2019) (emphasis in original).

8

The case *Hannon v. Beard* sets forth the standard for summary judgment on retaliation claims:

> "[I]n order to survive summary judgment on a retaliation claim, a prisoner must make out a prima facie case by adducing facts sufficient to show that [1] he engaged in a protected activity, [2] that the state took an adverse action against him, and that [3] there is a causal link between the former and the latter."[10]

645 F.3d 45, 48 (1st Cir. 2011).

Furthermore, § 1983 is often the legal mechanism on which a plaintiff can seek redress for alleged constitutional violations.[11] This is because "Title 42 U.S.C. § 1983 provides that '(e)very person' who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages." *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). For example, "[i]t is well established that claims of retaliation for the exercise of First Amendment rights are cognizable under section 1983."[12] *Gericke v. Begin*, 753 F.3d 1, 6 (1st Cir. 2014).

---

[10] Because the crux of Mr. Grossman's allegations involves the filing of grievances, and because filing a grievance is a constitutionally-protected activity, *see Price v. Wall*, 464 F. Supp. 2d 90, 95–96 (D.R.I. 2006) (citing *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222, (1967)), the first element of the tripartite test is satisfied.

[11] Mr. Grossman slightly misstates the standard. The right to petition the government for redress has to do with the right to bring one's case before a court, not the right to file a grievance. *See Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011); *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 896–897 (1984) ("[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.")

[12] The Court presumes that this action is a § 1983 action for two reasons. First, Mr. Grossman asserts, and Defendants do not deny, that Mr. Grossman could sue under 42 U.S.C. § 1983. Secondly, even if Defendants were to deny that Mr. Grossman could sue under § 1983, their analysis would fail because Mr. Grossman has met both elements of the two-part test: Both Warden Martin and Unit Manager Caniglia are acting under the color of state law, and that conduct is alleged to have

### 1.    Adverse Action/Causal Link

"An action is considered adverse for retaliation purposes if it would deter a person of ordinary firmness from the exercise of the right at stake." *Price*, 464 F. Supp. 2d at 97 (D.R.I. 2006) (internal quotations omitted).    If an adverse action is considered "de minimis," it does "not give rise to a cognizable retaliation claim under § 1983." *Starr v. Dube*, 334 F. App'x 341, 342 (1st Cir. 2009) (per curiam).    "[A]n adverse act is not de minimis if it would chill or silence a person of ordinary firmness from future First Amendment activities."[13]   *Id.* (internal quotations omitted).    "The plaintiff's evidentiary burden is merely to establish the factual basis for his claim that the retaliatory acts amounted to more than a de minimis injury." *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).   "*Actual* deterrence need not be shown. Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (emphasis in original) (citation omitted) (internal quotations omitted).

---

deprived Mr. Grossman of his First Amendment rights. *See Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989).

[13] Some courts have treated claims alleging adverse action against a prisoner with skepticism. *See, e.g., Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) ("Notably, [the Second Circuit Court of Appeals] approach[es] prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (internal quotations omitted)).    However, this Court eschews such an approach for a myriad of reasons, particularly because each case that a person brings before the Court, whether they are detained, deserves to have their case determined on the individual facts, not a preconceived notion of what might occur in a prison setting.

"The definition of adverse action is not static across contexts." *Thaddeus–X v.
Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). Indeed, a court should consider the totality
of the circumstances to evaluate whether an inference of retaliation is permissible.
*Cf. Ferranti v. Moran*, 618 F.2d 888, 892 (1st Cir. 1980) (holding that "an inference of
retaliation [was] warranted from the chronology of events recited . . . and from the
allegation that appellant's first suit complains of prison conditions and is directed at
prison officials") (citation omitted)). Nonetheless, "[t]he inquiry into whether an
action is sufficiently adverse to support a claim is based on an objective standard
rather than a subjective one, such that it is capable of screening the most trivial of
actions from constitutional cognizance." *Ayotte v. Barnhart*, 973 F. Supp. 2d 70, 94
(D. Me. 2013) (internal quotations omitted).

### a.   Corrections Officer Carter

Mr. Grossman alleges that Officer Carter acted adversely toward him because
he exercised his constitutional rights. ECF No. 163 at 34–39. As Mr. Grossman
argues, the Court should consider circumstantial evidence when there are limited
means of supporting one's claim. *See id.* at 31. However, the record is void of any
indication that Officer Carter acted adversely toward Mr. Grossman and even the
circumstantial evidence fails to show that Officer Carter took adverse action against
him. *Cf. See Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.
1995) (holding that the burden first falls on the movant to show no material fact, such
that the matter need not proceed to trial)).

It does not appear from the record that Officer Carter responded adversely to the grievance being approved. In fact, despite the allegations of retaliation committed by both Officer Carter and Unit Manager Caniglia, *see* ECF No. 163 at 34–61, Mr. Grossman, in his deposition, does not allege any retaliation by Officer Carter. *See* ECF No. 163-11 at 45:25–46:5 (responding that there were no other acts of retaliation alleged besides those of Unit Manager Caniglia and Warden Martin); ECF No. 163-11 at 75:1–3 (responding to the question of whether there were any complaints against Officer Carter alleging retaliation by saying: "Not on Ms. Carter that I know of").

Mr. Grossman "failed to demonstrate that he suffered any adverse action" at the hands of Officer Carter. *See* ECF No. 172 at 8. Because there is no evidence of any adverse action taken by Officer Carter, this Court GRANTS Defendant Officer Carter's Motion for Summary Judgment.

### b.   Unit Manager Caniglia

Unit Manager Caniglia is alleged to have retaliated against Mr. Grossman because he filed a grievance against Officer Carter. *See* ECF No. 163-11 at 43:11–14. Unit Manager Caniglia received a report that Mr. Grossman had acted disrespectfully toward Officer Carter. *Id.* at 41:21–42:5. Upon obtaining such information and knowing that Mr. Grossman was on the waitlist for a pod worker position, Unit Manager Caniglia warned Mr. Grossman that additional instances of disrespect would put his potential pod worker position in jeopardy. *Id.* at 41:21–42:5. Mr. Grossman alleges this warning constituted a threat, and therefore an adverse

action in response to exercising his constitutional rights. ECF No. 163 at 44–46. More particularly, Mr. Grossman alleges that Unit Manager Caniglia entering his cell to inform him constitutes a threat, as it deterred him from pursuing further action out of fear of losing his potential pod worker job. *Id.* Mr. Grossman defines the "verbal threat being that [Unit Manager Caniglia] would not hire [Mr. Grossman] for a pod worker position" when the time came. ECF No. 163-11 at 46:11–12.

The Court need not reach the issue of whether the threat represented an adverse action, because even if it did, Mr. Grossman has failed in his burden to present evidence on the third element of his claim – that there was a "causal link between" the engagement in a constitutionally protected activity and adverse action against him because of that engagement. *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011). The only evidence before the Court is that Ms. Caniglia addressed Mr. Grossman because of his reported disrespectful behavior. There is not sufficient evidence that the exercise of Mr. Grossman's constitutional rights was the cause of the alleged threats by Ms. Caniglia. Because Mr. Grossman is unable to meet all three prongs of the retaliation standard, this Court GRANTS Defendant Unit Manager Caniglia's Motion for Summary Judgment.

### c. Warden Martin

The final Defendant for whom retaliation is alleged is Warden Martin. Mr. Grossman alleges that Warden Martin stated that transfer was "only one phone call away." ECF No. 163 at 14. Defendants deny that Warden Martin ever uttered this phrase to, or about, Mr. Grossman. ECF No. 174 at ¶ 182.

Both parties argue the retaliation issue extensively with respect to Warden Martin. However, Warden Martin's liability may be ascertained by determining whether Mr. Grossman exhausted his administrative remedies against Warden Martin. Because the exhaustion issue raised by Warden Martin disposes of his liability, the Court will address that issue first.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This means that, before a case a can be brought in court, administrative law requires "using all steps that the agency holds out, and doing so *properly.*" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original) (internal quotations omitted). The purpose of this exhaustion requirement is to afford "corrections officials time to and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

"Mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."[14] *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). "That mandatory language means that a court may not excuse a failure to exhaust . . . ." *Id.* at 1856. Therefore, "there is no 'futility' exception to the

---

[14] Constitutional claims are not excepted from the exhaustion requirements of the PLRA. The Supreme Court in *Woodford* "turned aside a requested exception for constitutional claims." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 91, n.2 (2006)).

exhaustion requirement." *Sergentakis v. Channell*, 272 F. Supp. 3d 221, 227 (D. Mass. 2017) (citing *Medina–Claudio v. Rodriguez–Mateo*, 292 F.3d 31, 35 (1st Cir. 2002)).

Mr. Grossman admits that he did not exhaust his administrative remedies.[15] Instead, he argues that he should be estopped from having to exhaust his administrative remedies.   ECF No. 163 at 68.   Because the Warden is the final arbiter of grievances, he asserts that filing a grievance against Warden Martin would be futile. *Id.* at 68–69. Mr. Grossman's futility argument is not well taken because it is the law of this Circuit that futility is neither a sufficient excuse nor justification for skirting the PLRA's exhaustion requirement. *See Medina–Claudio v. Rodriguez–Mateo*, 292 F.3d 31, 35 (1st Cir. 2002).

In his defense, Mr. Grossman argues that he was estopped from filing a grievance against Warden Martin, who simultaneously rendered this administrative remedy unavailable. *See* ECF No. 163 at 67–74. An inmate may be estopped from asserting exhausting his administrative remedies when threats against an inmate: "(1) make administrative remedies unavailable, thus rendering the exhaustion requirement inapplicable; (2) estop any defendant who made such threats from presenting the affirmative defense of failure to exhaust; and (3) serve as a 'special circumstance' that justifies an inmate's failure to exhaust." *Thompson v. Gordon*, No. 2010 D.N.H. 104, 2010 WL 2629416, at *2 (D.N.H. June 28, 2010) (citing *Hemphill v. New York*, 380 F.3d 680, 686–91 (2d Cir. 2004)).   Relatedly, "[t]he test for

---

[15] *See supra* note 8.

determining whether administrative remedies are available is objective and asks whether 'a similarly situated individual of ordinary firmness [would] have deemed them available.'" *Perfetto v. New Hampshire State Prison, Warden*, 2008 WL 943372, at \*6 (D.N.H. Apr. 8, 2008) (citing *Hemphill*, 380 F.3d at 688 (2d Cir. 2004)).

Even when viewing the facts in the light most favorable to Mr. Grossman, his defenses of estoppel and unavailability does not excuse his failure.   Despite Mr. Grossman's fears of retaliation, remedies were still available to him.   Indeed, he still could have filed a grievance against the Warden.   There was nothing preventing Mr. Grossman from filing a grievance except his "subjective belief or fear of retaliation . . . [which] cannot give rise to estoppel excusing exhaustion." *Thompson*, 2010 WL 2629416, at \*2 (D.N.H. June 28, 2010); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the exhaustion requirement would be undermined if generalized, subjective fears provided a basis for negating that requirement).   Indeed, as Mr. Grossman himself states: "I also did not file a grievance against Warden Martin for his retaliatory threats because *I believed* that if I did file such a grievance that I would be transferred [to the] ACI.   It was *my understanding* that if I filed any grievances at all that I would be transferred to the ACI." ECF No. 163–1 at 4 (emphasis added).   Nor does the record provide any indication that a similarly situated individual would have found the administrative remedy of filing a grievance unavailable.   To the contrary, other similarly situated individuals were unafraid to file grievances. *See* ECF No. 163-11 at 58:22–60:11.

As a result, the Court GRANTS summary judgment for Warden Martin because of Mr. Grossman's failure to exhaust administrative remedies and DENIES Mr. Grossman's Motion for Summary Judgment with respect to Warden Martin for retaliation.

### B.    Supervisory Liability

Defendants claim that because there is no evidence of a failure to train by Warden Martin, summary judgment should enter in Warden Martin's favor on this issue. *See* ECF No. 172 at 12. Moreover, they claim that there can be no supervisory liability in § 1983 cases based on *respondeat superior.  Id.* (citing *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)).

Under these particular facts, the Court will consider supervisory liability under § 1983, not *respondeat superior.*[16] In this context, a supervisor "may be found liable only on the basis of her own acts or omissions." *Figueroa v. Aponte–Roque*, 864 F.2d 947, 953 (1st Cir.1989). To then evaluate liability of a supervisor's actions, the Court must engage in a two-part test. The Court should determine whether "(1) the behavior of [a] subordinate[] results in a constitutional violation and (2) the official's action or inaction was affirmative[ly] link[ed] to that behavior in that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." *Lipsett v. University of Puerto*

---

[16] While Defendants are correct that there can be no *respondeat superior* for § 1983 matters, this claim is not for *respondeat superior.* Indeed, it is substantially narrower. *Cf.* Restatement (Third) of Agency § 2.04 (2005) (defining *respondeat superior* as "[a]n employer [being] subject to liability for torts committed by employees while acting within the scope of their employment").

*Rico*, 864 F.2d 881, 902 (1st Cir. 1988) (citation omitted) (internal quotations omitted).  Neither element of this test is met.

The failure to train allegation must amount to active encouragement, acquiescence, or gross indifference.  *See id.*   That Warden Martin assured Mr. Grossman that he would speak to Unit Manager Caniglia about his fears of retaliation for filing grievances shows a lack of deliberate indifference.  Even before the incident with Unit Manager Caniglia, Warden Martin: held a town hall meeting less than two hours after the event, *see* ECF No. 173 at ¶ 316; approved Mr. Grossman's grievance against Officer Carter, *see* ECF No. 164 at ¶ 225; and compelled Sgt. Cote to apologize for "acting unprofessionally" toward the inmates, *see* ECF No. 173 at ¶ 316.

Therefore, because Warden Martin did not act with the requisite gross indifference, and even appears to have acted contrary to the standard required to hold him liable under this theory, the Court GRANTS Defendants' Cross-Motion for Summary Judgment regarding Defendants' liability.

## IV.   CONCLUSION

For all these reasons, the Court DENIES Mr. Grossman's Motion for Summary Judgment, ECF No. 163, and GRANTS the Defendants' Cross-Motions for Summary Judgment, ECF No. 172.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

October 12, 2021